**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CIVIL ACTION NO.: 5:16-MC-18-D**

| | |
|---|---|
| **WILLIAMSON FARM,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **DIVERSIFIED CROP INSURANCE** | ) |
| **SERVICES a/k/a CGB DIVERSIFIED** | ) |
| **SERVICES, INC.** | ) |
| | ) |
| **Respondent** | ) |
| | ) |

**DIVERSIFIED CROP INSURANCE SERVICES' MEMORANDUM BRIEF**
**IN SUPPORT OF ITS MOTION TO VACATE ARBITRATION AWARD**

COMES NOW Diversified Crop Insurance Services ("DCIS"), by and through counsel, and

in support of its Motion to Vacate Arbitration Award, herein submits the following:

## I. INTRODUCTION

DCIS herein moves this Court for an Order vacating the arbitration award that was entered

in this matter on or about May 11, 2016, in the action styled *Williamson Farm v. Diversified Crop*

*Insurance Company*. A lengthy introduction may not be needed as Williamson Farm ("WF")

previously moved to confirm the same arbitration award which DCIS now moves to vacate. See

WF's Motion to Confirm Arbitration Award, Doc. 01, filed on May 12, 2016. DCIS thereafter

responded in opposition (see Doc. 09), after which WF filed a reply (see Doc. 10).

DCIS and WF were parties to two (2) federal crop insurance policies that covered WF's 2013

crops in Montgomery and Richmond Counties, North Carolina, under coverage terms specified in

7 CFR Part 457 (hereafter the "Policy"); <u>see</u> Common Crop Insurance Policy, Exhibit A. The applicable policy at issue in the subject arbitration is codified federal law. <u>See</u> 7 USC §1501, *et seq*.

WF demanded arbitration under the Policy through the American Arbitration Association to resolve its dispute of determinations made by DCIS regarding claims that WF submitted under the Policy, and DCIS and WF participated in an in-person arbitration hearing in Raleigh, North Carolina, on April 19-20, before a single arbitrator. The American Arbitration Association delivered the award to all counsel via email on May 11, 2016, awarding WF damages totaling $639,929.44. <u>See</u> subject award, attached hereto as Exhibit B. Said award did not represent an amount arising under contract, but instead represented claims based upon alleged torts, including a trebling factor and attorney's fees and costs.

The arbitration clause prohibits the arbitrator from interpreting the policy or procedure, reserving that authority for the Federal Crop Insurance Corporation ("FCIC"), and automatically nullifies any award that includes such impermissible interpretations, as discussed in detail herein. Further, the federally-imposed arbitration clause also requires that any award must include particular claim-related findings. A review of the subject award demonstrates that the arbitrator interpreted several policy-based issues and that she failed to provide the appropriate breakdown by policy and crop as it concerns the actual award.

DCIS seeks to vacate and/or nullify the award pursuant to §§10(a)(3) and (4) of the Federal Arbitration Act ("FAA") and the federal policy's arbitration clause upon grounds that the arbitrator: 1) exceeded her authority by making policy and procedure interpretations that were within the exclusive authority of FCIC; 2) exceeded her authority by waiving and varying the subject policy's terms and conditions and otherwise awarding damages to which WF was not entitled to recover; and

2

3) refused to hear evidence pertinent and material to the controversy by failing to include a "breakdown by claim" with regard to the actual monetary award rendered. Any of these acts, alone, may serve as a basis for vacating the award and, thus, DCIS respectfully requests that this Court vacate the award on the grounds that the arbitrator failed to consider evidence and exceeded her powers, acts by which the arbitration clause deems the award an automatic nullity for the reasons explained below.

## II. THE FEDERAL CROP INSURANCE PROGRAM

### A. Background

The policy issued to WF is not a typical insurance policy; rather, the federally reinsured insurance policy at issue serves not only as a policy of insurance, but is also federal law. As federal law, the policy's insuring terms and conditions must be strictly construed and may not be altered. The federal crop insurance policy is drafted solely by the federal government, not DCIS. Further, all "approved insurance providers" like DCIS sell identical federally-drafted policies. All claims properly paid to producers under the federal crop insurance program are paid by the federal government, *i.e.*, the taxpayers of the United States. In addition to this indemnity subsidy, insureds like WF receive a federal subsidy which pays for much of their premium.[1]

Courts across the country have routinely held that statutes and regulations governing disbursement of funds under federal insurance programs must be strictly construed. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L. Ed. 10 (1947) ("Men must turn square corners when they deal with the Government."); Mancini v. Redland Ins. Co., 248 F.3d 729, 733 (8th

---

[1]WF was charged premium totaling $162,565 for the entirety of its policy (which includes many more acres than are at issue in this dispute). Of this amount, the FCIC paid $110,570 of the total sum. See Exhibit C.

Cir. 2001) ("...courts must strictly construe the statutory and regulatory limits upon disbursements of funds through federal insurance programs."); <u>Gowland v. Aetna</u>, 143 F.3d 951, 954 (5th Cir. 1998) ("Active provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced."); <u>Byrne v. Federal Crop Insurance Corporation</u>, 289 F. Supp. 873, 874 (D. Minn. 1968) (regulations promulgated by the FCIC under the FCIA have force of law and must be complied with). Hence, the provisions of the federal crop insurance policy must be strictly construed and enforced. The preamble to the subject insurance policy states: "In return for the payment of premium *and subject to all of the provisions of this policy*, we agree with you to provide risk protection as stated in this policy." <u>See</u> Policy, Exhibit A.

Although DCIS is a private insurance company, federal crop insurance policies are issued pursuant to Standard Reinsurance Agreements with the Federal Crop Insurance Corporation ("FCIC"). As such, FCIC rules, regulations, and procedures govern the sale, issuance, and servicing of federal crop policies. <u>See</u> 7 C.F.R. §400.168. Moreover, pursuant to the Supremacy Clause of the United States Constitution and the doctrine of preemption, federal law displaces state law to the extent that the latter is inconsistent with the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.*, and the FCIC rules, regulations and procedures promulgated thereunder.

The FCIC is both a governmental corporation and an agency of and within the United States Department of Agriculture, created by the FCIA. The FCIA and the regulations promulgated at 7 C.F.R. Part 400 govern its operations. The federal crop insurance program was developed because the private commercial sector was unwilling to provide multiple peril crop insurance to this nation's farmers. <u>See</u> <u>Federal Crop Insurance Corp. v. Merrill</u>, 332 U.S. 380, 383 n.1, 68 S. Ct. 1, 92 L. Ed 2d 10 (1947). Deeming federal crop insurance to be necessary for the economic stability of

4

America's agriculture community, Congress enacted the FCIA. <u>See</u> 7 U.S.C. §1502. The FCIA authorizes, empowers, and directs the FCIC to provide reinsurance, to the maximum extent practicable, to insurers that insure producers of any agricultural commodity under a plan or plans acceptable to the Corporation. 7 U.S.C. §1508(k).

The FCIC provides uniform policy provisions, sets premium rates for each county and crop insured, subsidizes and receives premiums, and pays claims. Further, although the FCIC-reinsured crop insurance policies ostensibly represent agreements between private parties, the FCIC is extensively involved in all aspects of these contracts, and it exerts control over all aspects of the reinsurance program. <u>See</u>, <u>e.g.</u>, 7 C.F.R. §400.165 (insurance companies that enter into reinsurance contracts must meet exacting eligibility and reporting requirements of FCIC); 7 C.F.R. §400.166(a) (all terms of policies under reinsurance agreement are subject to FCIA and regulations promulgated thereunder); 7 C.F.R. §400.168(a) (insurance companies must follow FCIC procedures in administration of policies); 7 C.F.R. §400.168(d) (insurance companies must utilize all loss adjustment procedures approved by FCIC); 7 C.F.R. §400.168(e) (insurance companies may sell policies under reinsurance agreement only through licensed agents or brokers who have successfully completed training courses approved by FCIC).

The FCIA mandates the preemption of state law "to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations." 7 U.S.C. §1506(l). Again, this preemption is codified law and is also contained within the applicable policy. Section 31 of the Policy, entitled "Applicability of State and Local Statutes," provides:

> If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local

5

laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

See Policy, Exhibit A. The rationale for federal preemption has been stated as follows:

> Despite this well recognized preemption of State law . . . [j]udgments have been entered [against reinsured companies] because of requirements of the FCIC Act or procedures and policy provisions mandated by the FCIC. The Federal Crop Insurance Act restricts the losses which can be covered and causes of losses which can be insured against. The procedures, rules, and terms of insurance are to be established by FCIC. Appropriations by the Congress are to be used for their intended purpose and not to pay judgments which may or may not bear any relation to the loss which has been incurred.

55 F.R. at 23066-67 (*enacting* 7 C.F.R. §400.352). Without the protection of these preemptive regulations, private reinsured companies would find themselves in a precarious position: forced to choose between conflicting state and federal insurance regulations, or more probably, forced to discontinue writing federal crop insurance in those states with laws contrary to FCIC regulations. The latter, of course, is contrary to the express policies of the FCIA, see 7 U.S.C. §1508(k), and provides independent grounds for preemption. Free v. Bland, 369 U.S. 663, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962) (state law is preempted where there is outright or actual conflict between federal and state law); Karl v. Burlington Northern R. Co., 880 F.2d 68, 76 (8th Cir. 1989) (state laws may be preempted if they actually conflict with an express or implied federal declaration). Therefore, the determination as to liability with respect to the sale, issuance, and service of a federal crop insurance policy is governed exclusively by the Federal Crop Insurance Act and the established rules, regulations, practices, and procedures of the Federal Crop Insurance Corporation.

Further, 7 C.F.R. §400.352 precludes the award of any fines, punitive damages, attorney's fees, and costs against private reinsured companies. See 7 C.F.R. §400.351 (preemptive provisions of 7 C.F.R. §400.352 "are applicable to all policies of insurance, insured *or reinsured* by the

6

Corporation") (emphasis added).  See also Policy, at §20(i) ("... you may recover attorneys fees *or other expenses*, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we ... failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.").[2]

The subject dispute involved alleged misrepresentations by DCIS's agents.  Without question, these claims sound in tort, not contract.  To that end, section 20(h) of the policy provides:

> Except as provided in section 20(i), **no award** or settlement in mediation, **arbitration**, appeal, administrative review or reconsideration process or judicial review **can exceed the amount of liability established *or which should have been established*** under the policy, except for interest awarded in accordance with section 26.

See Policy.  To render an award based upon misrepresentation, estoppel, reliance, *etc.*, would violate (*i.e.*, waive / alter) the policy on multiple fronts.  The preamble to the subject policy states:

> This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act (Act) (7 U.S.C. 1501 et seq.).  All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act.  **The provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement**.

Id.  This means that when the arbitrator issued her award, giving damages based in tort, including treble damages, that by definition, she awarded indemnity created by a waiver or variance of the policy's terms and conditions, thus abrogating federal law.

---

[2]RMA has not made such a determination nor otherwise given the "green light" for the imposition of any these damages, not that they would be recoverable in arbitration.  See discussion, *infra*, regarding these damages only being recoverable in a judicial review, not arbitration.

7

**B.      Recent Strengthening of the Federal Program's Preemptive Nature**

In recent years, federal statutory law has been amended (or repealed) and the policy itself has been rewritten such that cases commonly cited by insureds to support application of state law are no longer controlling.  See, *e.g.*, Dailey v. American Growers, 103 S.W.3d 60 (KY 2003) and Nobles v. Rural Community Ins. Services, 122 F.Supp 2d 1290 (M.D. Ala. 2000).  In sum, these cases are now "bad law."  The reason is that the Dailey and Nobles courts and others, both state and federal, based their decisions largely, if not solely, upon language that was *then* found in 7 CFR §400.352 and/or CFR §457.6.[3]  Dailey specifically cited 7 CFR §400.352(b)(4) for the proposition that "nothing herein is intended to preclude any action on the party of any authorized ... State court ..." However, 7 CFR §400.352(b)(4) has been *amended*, and it now reads as follows with specific regard to the portion relied upon by the Dailey court:

> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:
>
> * * *
>
> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company ***if* a determination is obtained from FCIC that the** company, its employee, **agent** or loss adjuster **failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the**

---

[3]Of note, Dailey involved a 1996 crop insurance policy.  The common crop provisions have been rewritten at least three (3) times since then, with the most recent versions of the policy (before this dispute arose) being the 2005 and 2011 versions.  Again, the policy itself is federal law.

8

> **insured receiving a payment in an amount that is less than the
> amount to which the insured was entitled**) ...

7 CRF §400.352(b)(4). Thus, this key statute has been amended and no longer reads as it did at the time <u>Dailey</u> and <u>Nobles</u> were rendered. Now, in order for these types of damages to be awarded, **there must first be a determination by FCIC, crop insurance's governing body, that there was a failure to comply with the policy's terms and conditions.**[4] FCIC has made no such determination – nor did the arbitrator do so in her opinion – such that her award could not include these types of "state law" damages.

The <u>Nobles</u> court likewise relied upon 7 C.F.R. §457.6 in an effort to overcome federal preemption. However, said regulation cited and relied upon by the <u>Nobles</u> court (among many) has been repealed for nearly a decade. <u>See</u> 69 Fed. Reg. 48652-01, at 48654-56 (Aug. 10, 2004).

The pertinent portions **of the *repealed* provision** stated as follows:

§457.6. Good faith reliance on misrepresentation.

Notwithstanding any other provision of the crop insurance contract, whenever:

> (a) person entering into a contract of crop insurance under these regulations who, as a result of a misrepresentation or other erroneous action or advice by an agent or employee of the Corporation . . . (2) Has suffered a loss to a crop which is not insured . . . but which the insured believed to be insured . . . and ... An agent or employee of the Corporation did in fact make such misrepresentation or take other erroneous action or give erroneous advice...

Common Crop Insurance Regulations, 56 FR 1345-01, *repealed* 69 Fed. Reg. 48652-01, at 48654-56 (Aug. 10, 2004). The repealed regulation provides a detailed procedure by which a person could obtain crop insurance in the absence of coverage in limited circumstances. In light of their repeal, the legal proposition in <u>Nobles</u> / <u>Dailey</u> is no longer good law.

---

[4]The arbitration herein made no such findings, further rendering her award subject o nullification, the lack of any FCIC determination supporting same notwithstanding.

After the repeal of 7 CFR §457.6, the provisions governing arbitrations were amended for the 2005 policies and all subsequent years. Specifically, subparagraphs (h) and (i) of Section 20 (*i.e.*, those at the heart of the arbitrator's many interpretations) were added to the Common Crop provisions and codified at 7 CFR §457.8.[5] As DCIS has extensively discussed, **these two (2) provisions specifically provide that no award in arbitration can exceed the amount of liability which was *established under the policy* or which should have been established under the policy and specifically prohibits the award of any compensatory or any other damages**.

In October, 2013, RMA issued Final Agency Determination 193 (FAD-193). See Exhibit F, attached. In explaining these provisions discussed above, RMA stated that "the reference to [judicial review only] is to clarify that such damages can only be sought during an appeal to the Courts, after an FCIC determination has been obtained, **and cannot be awarded in arbitration. To obtain a determination that will enable the insured to recoup attorney's fees, expenses, or damages from the AIP, the insured must send a request for determination to the RMA Deputy Administrator of Compliance after the insured has filed an appeal for judicial review**."

---

[5]As explained by the FCIC in response to the proposed repeal of the regulations relied upon in Nobles, the policy provisions cannot be waived or re-written:

> [T]he preamble to the policy specifies that no policy provisions may be waived or varied in any way by an insurance provider, agent or any other contractor or employee of the insurance provider or USDA unless the policy specifically authorizes a waiver or modification by written agreement. To allow for equitable relief could permit government employees, insurance providers or agents to modify or waiver policy provision, which would conflict with the preamble.

69 Fed. Reg. 48652-01, at 48654-56 (Aug. 10, 2004); see also Pelzer v. ARMtech Ins. Services, Inc., 928 F.Supp.2d 1071, 1079-80 (E.D. Ark. 2013) (*citing* commentary and stating that "[t]his commentary confirms that **the contract cannot be reformed**. . .").

**C.    The Scope of an Arbitrator's Authority Is Limited: Liability Cannot Be "Created" as this Alters the Terms and Conditions of the Subject Policy.**

As noted above, the subject policy is clear in noting that its terms and conditions may not be altered or waived by anyone.   Thus, *even if* an arbitrator finds that a "state law claim" (here, allegations of misrepresentation) has been asserted, liability cannot be created, and no indemnity can be ordered to be paid when it is the result of a policy variance.   In fact, an arbitrator is legally estopped from making an award based upon any such grounds.   The authority for this, discussed in part above, is found at Section 20(h) of the policy:

> Except as provided in section 20(i), **no award** or settlement in mediation, **arbitration**, appeal, administrative review or reconsideration process or judicial review **can exceed the amount of liability established** or which should have been established **under the policy**, except for interest awarded in accordance with section 26.

See Policy, Exhibit A.

In the instant action, WF made no claims which arose "under" the contract, but instead, presented tort-based claims.   Thus, in the instant action, **there was *no* amount of liability established *under* the policy**.   Thus, for the arbitrator to render an award based upon a misrepresentation or estoppel served to 1) waive / alter the policy which is prohibited; and 2) said award was, by definition, an amount in excess of the liability "established" under the policy.

The Federal Crop Insurance Corporation is frequently called upon to make policy interpretations, procedural reviews, or otherwise offer guidance to participants to the federal crop insurance program (*i.e.*, both insurers and insureds).   This guidance may concern any portion of the Federal Crop Insurance Act or regulation made under the Act.   On March 24, 2014, FCIC was called upon to offer guidance concerning a similar question as posed here:   May a crop insurance agent

11

waive or alter the terms of the policy so as to create liability? The short answer from FCIC: No. The

basis for this response was, as follows:

> ... The policy is codified in the Code of Federal Regulations and has the force of law. Therefore, no one has the authority to waive or modify the provisions except as authorized in the regulations themselves. In accordance with section 506(l) of the Federal Crop Insurance Act (Act) (7 U.S.C. §1506(l)) state and locals laws are preempted to the extent that they are in conflict with the Act, regulations or contracts of FCIC. A vast majority of the policy provisions, including the preamble to the policy, are codified in regulation so they preempt state and local laws.

> \* \* \*

> In accordance with 7 C.F.R. §400.765(c), **this Final Agency Determination is binding on all participants in the Federal crop insurance program** for the crop years the policy provisions are in effect.

See FAD-211, attached as Exhibit D. **The FCIC went so far as to say that this means an**

_**arbitrator** has no authority_ **to order an approved insurance provider (like DCIS) to pay an**

**indemnity that is not justified by the terms of the policy,** _regardless_ **of any statements made to**

**the policyholder, including those by an agent of the company**. Id. Thus, a plain view of the

award rendered in the subject arbitration indicates that the arbitrator based her award upon alleged

misrepresentations and/or other "E&O" type findings. In so doing the arbitrator created coverage

that is not a product of the federally reinsured crop insurance policy.

DCIS would also note that FAD-225 holds that **if an arbitrator disregards an**

**interpretation from FCIC, any award rendered "is nullified."** See Exhibit E. FAD-225 has its

roots in 7 CFR §400.765 which states, in part:

> All final agency determinations [FADs] issued by FCIC, and published in accordance with §400.768(f), **will be binding on all participants** in the Federal crop insurance program.

12

See 7 CFR §400.765. Thus, FAD-211 and FAD-225 are binding upon WF as a "participant" in the federal crop insurance program, and it was incumbent upon the arbitrator to insure this. As noted below, because the arbitrator's award in wholly inconsistent with prior-issued FCIC interpretations, her award must be nullified. Again, §20(a)(1) states:

> ... However, **if the dispute** in any way **involves a policy or procedure interpretation**, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, *__or the meaning of any policy provision__* or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
>
> * * *
>
> (ii) **Failure to obtain any required interpretation from FCIC __will result__** in the nullification of any agreement or award.

See Policy, Exhibit A.

In sum, an arbitrator cannot render an award based in equity or upon misrepresentation. An arbitrator cannot alter or vary the policy's terms and conditions. An arbitrator cannot make a determination that DCIS failed to comply with the policy's terms and conditions. Finally, an arbitrator cannot interpret the policy. *All* of these forbidden practices were performed by the arbitrator in rendering her award. DCIS need only to demonstrate one (1) to have this decision vacated. It can show many ...

### III.  STANDARD OF REVIEW

Courts have found that arbitration pursuant to a federal crop insurance contract is subject to the FAA. Farm Mgmt. Co., LLC v. Rural Cmty. Ins. Agency, Inc., 2015 U.S. Dist. LEXIS 54754 at *9-10 (E.D. Wash. Apr. 21, 2015). A reviewing Court may vacate an arbitration award upon a showing of the existence of one of the statutory grounds specified in the FAA. See Capital Pizza Huts, Inc. v. Linkovich, 2015 U.S. Dist. LEXIS 158854 (W.D. Mo. Nov. 24, 2015). The principal

13

purpose of the FAA is to "ensur[e] that private agreements to arbitrate are enforced according to their terms." Volt Inf. Sciences v. Bd. of Trustees, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989).

The purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts but not more so. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n12, 87 S. Ct. 1801, 1806 n12 (1967). Arbitration is a matter of contract; a party cannot be required to submit a dispute to arbitration unless he has agreed to do so. Olsen v. United States, 546 F. Supp. 2d 1122, 2008 U.S. Dist. LEXIS 30878 (E.D. Wash. 2008).

The FAA provides that a court may only vacate an arbitration on one or more of the following grounds:

> (1) where the award was procured by corruption, fraud or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 USC §10(a). DCIS will demonstrate that – on multiple occasions – the arbitrator exceeded her powers per subsection (4). In addition, DCIS will demonstrate that the arbitrator refused to hear evidence as to the precise computation of the *contractual* claims at issue, per subsection (3), issuing an award that had no rational basis to the insurance contract at issue.[6]

---

[6]The reason for this is that the arbitrator's award was, in reality, grounded in tort, not contract, further illustrating that it was inherently faulty and subject to nullification as liability cannot be "created."

## IV. THE ARBITRATION CLAUSE LIMITS THE ARBITRATOR'S AUTHORITY

### A. The Arbitration Agreement Is Federal Law, with a Narrow Scope.

The federally-mandated coverage terms require at 7 CFR §457.8 (MPCI Basic Provisions §20 (a)(1), Exhibit A) that "if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we ***must*** obtain an interpretation from FCIC." Awards that reflect unauthorized interpretations are automatically void and thus cannot be binding. See 7 CFR §457.8, MPCI Basic Provisions §20(a)(1)(ii); see also Exhibit A.

The federally-mandated coverage terms also require at 7 CFR §457.8 (§20(a)(2) ) that "... the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award.... Failure of the arbitrator to provide such written statement will result in the nullification of all determinations of the arbitrator."

Where an arbitration clause is narrowly tailored so that it is applicable only in a clearly defined situation, the scope of arbitration is limited to that so specified. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). An arbitrator can force a party to a contract to arbitrate only as to the scope to which the party has specifically agreed. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995). The presumption of arbitrability does not have as great a force when the arbitration clause is narrow. Centralab, Inc., Ft. Dodge v. Local No. 816, International Union of Electrical, etc., 827 F.2d 1210, 1215 (8th Cir. Iowa 1987). No authority permits an arbitrator to override federal law that limits her authority.

**B.      RMA Final Agency Determinations Bind the Parties *and the Arbitrator*.**

**1.      FADs Are Generally Applicable to All Program Participants.**

In response to Congress' mandate at 7 U.S.C. §1506(r), FCIC created a process to handle requests for final agency interpretations of the crop insurance program regulations by promulgating 7 CFR Part 400, Subpart X.  Subpart X provides procedures for responding to requests for "Final Agency Determinations" ("FADs") as to FCIC's interpretation of particular provisions of the FCIA or any regulation promulgated thereunder.   The Determinations/FADs are then published electronically by FCIC as specially numbered documents on the RMA website in accord with 7 CFR §400.768(f).   As touched upon, above, FAD-225 holds that if an arbitrator disregards an interpretation from FCIC, any award rendered "is nullified."  See Exhibit E.

The authority which binds these FADs to the policy, the subject federal program, and this dispute is 7 CFR §400.765 which states, in part:

> **All final agency determinations issued by FCIC, and published in accordance with §400.768(f), will be binding on all participants in the Federal crop insurance program**.

See 7 CFR §400.765.  RMA has issued several FADs that speak to the arbitrator's role in a federal crop insurance arbitration, and an arbitrator is charged with applying all FADs to the dispute at issue. FCIC-issued FADs are not specific to one case, but are generally applicable to all participants, and applying FADs to the factual issue in arbitration is the responsibility of the arbitrator.  See FAD-230, Exhibit G.  "[I]f an interpretation of a statutory provision, policy provision, or procedure is in dispute and has not been addressed by a previous FAD, a separate request for a new FAD must be made in accordance with 7 C.F.R. § 400.765."  See FAD-231, Exhibit H.

16

### 2. Indemnity Must Be Justified By the Policy Terms.

As also touched on above, FAD-211 states that the policy's terms are not waivable, and an arbitrator "may not award an indemnity or damages under a theory of equitable estoppel." <u>See</u> FAD 211, Exhibit D. In FAD-236, FCIC confirmed that "an arbitrator cannot use equitable estoppel to override or render inapplicable policy provisions that would otherwise apply in a given circumstance, since to do so would automatically nullify the arbitrator's award." The same principle of non-waiver applies to other forms of equitable relief. <u>See</u> FAD-236, Exhibit I.

### 3. FCIC Interpretations Are Binding.

The arbitrator is charged with applying "the Act and published regulations correctly when it renders an arbitration award" and is "required to apply the policy and procedural provisions in accordance with FCIC's interpretation." <u>See</u> FAD-230, Exhibit G. FADs in effect at the time of the arbitration are binding on the parties and the arbitrator, including all determinations in which the policy language has not changed. <u>See</u> FAD-231, Exhibit H.

### 4. If an FCIC Interpretation Is Not Obtained, the Award Is Nullified.

If there is a dispute over any policy provision or procedure, the parties are required to seek an interpretation from FCIC. "[I]f an arbitrator disregards an interpretation provided by FCIC, the award is nullified." <u>See</u> FAD-225, Exhibit E. "The nullification provision prevents any type of forum shopping so all producers and AIPs are treated the same and the same standards apply to all." <u>See</u> FAD-232, Exhibit J.

## V. THE AWARD INCLUDES IMPERMISSIBLE INTERPRETATIONS

### A.     MPCI Basic Provisions, §20(a)(1), Limits the Arbitrator's Authority.

The MPCI Basic Provisions, §20(a)(1), preclude the arbitrator from interpreting policy provisions and procedures and, in turn, nullifies any award in which that occurs.  There are few authorities that address the proper division of authority as between the FCIC and an arbitrator, and one recent decision turned on FCIC's opinion that there was already a FAD that addressed the interpretive issue of timeliness in that case.  Davis v. Producers Agric. Ins. Co., 762 F.3d 1276, 1284-1286 (11th Cir. 2014).  In Davis, the Court gave substantial weight to a FAD since it was a determination made by the agency charged with administering the statute.  Davis at 1286.  The distinction between impermissibly interpreting the policy or failing to treat agency interpretations as binding is a thin one, but the court must determine whether the arbitrator exceeded his authority in that regard.  Harrell & Owens Farm v. Fed. Crop Ins. Corp., 2011 U.S. Dist. LEXIS 30138 at *19 (E.D.N.C. Mar. 23, 2011).

### B.     The Arbitrator Improperly Interpreted the Subject Policy.

MPCI Basic Provisions §20 requires that when a "dispute in any way involves a policy or procedure interpretation . . . either you or we must obtain an interpretation from FCIC."  Section 20 further provides that "failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award."  In this case, the arbitrator improperly interpreted the policy provisions in several instances.  DCIS will set forth each such instance, below.

1) First and foremost, the arbitrator interpreted §20(h) by determining that she had the authority to award damages which "exceed[ed] the amount of liability established or which should have been established under the policy."  See award, Exhibit B.  At ¶13 of her award, the arbitrator made the explicit finding that "Section 20(h) does not expressly exclude any theories of liability (such as fraud) or types of damages ....  It

18

does not expressly exculpate insurers from their improper conduct such as fraud or breach of fiduciary duty, conduct that can trigger liability beyond liability for breach of contract." <u>Id.</u> at Exhibit B.  <u>See also</u>, ¶8(f).  Under the arbitrator's logic, *i.e.*, that she could make such an award for damages in addition to those "established under the policy," how could you ever have an award "exceed the amount of liability" established thereunder?  In other words, ***if the arbitrator has carte blanche over the amount of an award, how could an open-ended amount ever be exceeded?***

Alternatively, the arbitrator disregarded prior-issued FADs which were binding upon this proceeding.  Recall that FAD-211 (Exhibit D) holds that an arbitrator has no authority to order an approved insurance provider to pay an indemnity that is not justified by the terms of the policy, regardless of any statements made to the policyholder, including those by an agent of the company.  To complete the loop, FAD-225 holds that if an arbitrator disregards an interpretation from FCIC, any award rendered "is nullified."

The arbitrator exceeded her powers by awarding damages disallowed by the subject crop insurance policy.  Alternatively, she disregarded a FAD speaking directly to said issue.  Under either alternative, her award should be vacated per 9 USC §10(a)(4).

2) As an extension to the above argument concerning damages, the arbitrator also interpreted §20(i) by determining that she had the authority to award attorneys' fees, treble, and/or other damages and costs.  <u>See</u> Exhibit B.  As to this point, the arbitrator made considerable and crucial interpretations, stating:

> Section 20(i) does not in fact state that the arbitrator may not award attorneys' fees or punitive, compensatory or other damages.  Instead it appears to impose a type of condition precedent to the ultimate enforceability of such an award by a court.  Moreover, if the provision has the effect DCI claimed, the arbitrator would have little jurisdiction to decide anything.  That plainly cannot be the case.  Notably, the Policies are silent on timing, such that the condition precedent of FCIC determination could be satisfied post-award but prior to enforcement in court.

<u>See</u> Exhibit B, at ¶12.  There are no fewer than four (4) separate interpretations contained in the above-quoted paragraph.  If the arbitrator had this much doubt and consternation over what she could and could not award – and note that she spent two (2) full pages analyzing same in the "Scope" section of her award – then she should have requested a FAD or had the parties request one (or more?).  It is clear that the arbitrator could not accept the fact that her role in this dispute was limited with regard to her damage powers, writing in her decision:  "... the arbitrator would have little jurisdiction to decide anything."

As noted above, and alternatively, the arbitrator disregarded prior-issued FADs which were binding upon this proceeding, with FAD-211 (Exhibit D) holding that an arbitrator has no authority to order an approved insurance provider to pay an indemnity that is not justified by the terms of the policy. FAD-225 holds that if an arbitrator disregards an interpretation from FCIC, any award rendered "is nullified."

The arbitrator exceeded her powers by awarding damages disallowed by the subject crop insurance policy. Alternatively, she disregarded a FAD speaking directly to said issue. Under either alternative, her award should be vacated per 9 USC §10(a)(4).

3) In a strange bit of irony, the arbitrator actually interpreted §20(a)(1), the policy's "interpretation clause," apparently reaching the conclusion – despite struggling with same – that she did not need to obtain any interpretations upon the issues before her. See Exhibit B, at ¶8(e). Illustrative of the plain error in her logic, she first cites §20(a)(1), but then jumps to §20(b)(4) as to the timing and binding effect of an interpretation. In so doing, she skipped over §20(a)(1)(i) which holds that any interpretation "will be binding ... in arbitration." Instead, §20(b)(4) speaks to an interpretation "In any suit ..." See Exhibits A and B, respectively. The arbitrator concludes by rhetorically stating that the policy "does not say on whom [the interpretation] is binding." Of course, as noted numerous times throughout this brief, the policy states that any interpretation is not just binding in the action wherein it is sought, but is "considered a determination that is a matter of general applicability." This authority may also be found in 7 CFR §400.765 which states that "All final agency determinations issued by FCIC, and published in accordance with §400.768(f), will be binding on all participants in the Federal crop insurance program."

Respectfully, DCIS would simply note that in trying to interpret the interpretation provision, the arbitrator got it wrong. In so doing, the arbitrator exceeded her powers by attempting to interpret the subject policy, an act exclusively reserved for the FCIC. In turn, her award should be vacated per 9 USC §10(a)(4).

4) While not explicitly stated, the arbitrator implicitly interpreted §20(f) of the policy by allowing state law to trump the subject federal policy. She further interpreted §31 by applying state law that conflicted with the federal policy. In so doing, the arbitrator exceeded her powers such that her award should be vacated per 9 USC §10(a)(4).

5) Again, while not expressly stated, the arbitrator interpreted (and/or disregarded) the preamble to the subject policy by determining that the policy's terms and conditions *could* be waived or varied by her.

As noted above, and alternatively, the arbitrator disregarded prior-issued FADs which were binding upon this proceeding, with FAD-211 (Exhibit D) holding that an arbitrator has no authority to order an approved insurance provider to pay an indemnity that is not justified by the terms of the policy and that the policy's terms are not waivable. See FAD-211, Exhibit D. Further, FAD-236 confirmed that "an arbitrator cannot use equitable estoppel to override or render inapplicable policy provisions that would otherwise apply in a given circumstance, since to do so would automatically nullify the arbitrator's award." Finally, FAD-225 holds that if an arbitrator disregards an interpretation from FCIC, any award rendered "is nullified."

The arbitrator exceeded her powers by waiving and varying the subject policy's terms and conditions. Alternatively, she disregarded at least two (2) FADs speaking directly to said issue. Under either alternative, her award should be vacated per 9 USC §10(a)(4).

6)  Finally, the arbitrator interpreted §6(d)(1) of the Policy when she apparently determined that DCIS had the ability – despite policy language to the contrary – to modify WF's Acreage Report under the facts as existed in this dispute. See Award, at ¶¶ 39 & 40. In essence, the arbitrator unilaterally determined that said subsection in the policy would have allowed for relief for the mistake made, but this section has been misapplied. Although the analysis is shallow and conclusory, it nevertheless took an interpretation on the part of the arbitrator to reach this conclusion. As such, the arbitrator exceeded her powers such that her award should be vacated per 9 USC §10(a)(4).

One issue before the Court is whether the matters in dispute in the arbitration or the resulting award include policy interpretations that should have been submitted to FCIC pursuant to the policy. If such interpretive issues are present, then the arbitration clause mandates the nullification of the award. See Policy, Exhibit A; see also, Garnett v. NAU Country Ins. Co., 2009 U.S. Dist. LEXIS 100140 (W.D. Ky. Oct. 26, 2009). An arbitrator can only possess that power which the parties have agreed to give to him. Centralab, Inc., Ft. Dodge v. Local No. 816, International Union of Electrical, etc., 827 F.2d 1210 (8th Cir. Iowa 1987). MPCI Basic Provisions §20(a)(1) prohibits the arbitrator from interpreting the policy, since only FCIC is authorized to do so. Farm Mgmt. Co., LLC v. Rural Cmty. Ins. Agency, Inc., 2015 U.S. Dist. LEXIS 54754 at *18-19 (E.D. Case 5:16-mc-09001-DW

Wash. Apr. 21, 2015).  The presumption of arbitrability does not have as great a force when the arbitration clause is narrow.  <u>Centralab, Inc., Ft. Dodge v. Local No. 816, International Union of Electrical, etc.</u>, 827 F.2d 1210, 1215 (8th Cir. Iowa 1987).

The arbitration clause at issue strictly limits the arbitrator's authority, and the arbitrator acted outside of that authority.  In this case, the arbitrator had no authority to interpret the policy, but as evidenced above, she liberally interpreted multiple provisions.  By definition, any award that contains such impermissible interpretations is nullified per the terms of the arbitration agreement.  This is true regardless of whether the arbitrator's interpretations are rational and reasonable because she did not have the authority to make any interpretations in the first place.

The Federal Arbitration Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." <u>Volt Info. Sciences, Inc. v. Bd. Of Trustees</u>, 489 U.S. 468, 478 (1989).  If the Court determines that the arbitrator interpreted the policy, or failed to follow previously issued federal guidance (*i.e.*, FADs), even if she did so rationally, the Court should likewise find that the arbitrator exceeded her authority and vacate the award in accordance with 9 USC §10(a)(4).

## VI.  THE AWARD DOES NOT SATISFY MPCI BASIC PROVISIONS §20(a)(2)

### A.  MPCI Basic Provisions §20(a)(2) Mandates the Form of the Award.

MPCI Basic Provisions §20(a)(2) requires that the arbitrator "*must* provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award.  The statement must also include any amounts awarded for interest.  **Failure of the arbitrator to provide such written statement will result in the nullification of all determinations of the arbitrator**."  Any award that

22

does not include each of those requirements is void.  This matter involves two separate claims arising under the same policy, and for an award to be valid, the arbitrator must have supported her determinations regarding each issue, including the amount and basis for any award.

**B.     The Award Does Not Include a Claim Breakdown / Basis**

The award as it stands does not comply with MPCI Basic Provisions §20(a)(2), because it does not include a "breakdown by claim."  To be clear, the arbitrator obviously spent considerable time analyzing various and sundry *tort* claims.  This began with the alleged error of one agent and continued to the alleged error of another.  Without question, the arbitrator gave a breakdown on the facts giving rise to her decision, DCIS's objections to same – raised herein – notwithstanding.  However, DCIS – in this portion of its relief request – is not speaking to any tort claims, but rather to the contract claims – *if any* – that arise from the subject contract.[7]

For purposes of §20(a)(2), each claim at issue is a separate claim, and each claim should have, at a bare minimum, an explanation arising *under the policy* as to the basis – in contract – for said amount awarded.  It cannot be forgotten that only those damages arising pursuant to the policy were awardable.  That said, the award does not provide the basis upon which the amounts awarded were derived (or calculated).  It simply includes two "numbers," generically speaking.  Missing are references to things which, formulaically, should be present in an award arising under a crop insurance policy, including, but not limited to, the following: 1) the county of award (since there was

---

[7]While only the arbitrator could answer this question, a plain review of her award indicates damages awarded *only* arising in tort, despite the reference, in ¶5 of the award, to "Contract Claims." The reason for this belief is because DCIS, as the insurer, was able to calculate the precise value of the claim(s) arising under the subject contract and submitted said evidence post-hearing (while the hearing was still open).  Needless to say, these contractually determined damages do not appear in the award.

a dispute as to the proper county of reporting); 2) number of acres on which a claim was awarded (since there was a dispute as to eligible acres); 3) coverage level (*i.e.*, percentage of coverage purchased); 4) dollar amount of liability; and 5) premium due. That latter item, premium, is most telling because in testimony developed, WF admitted that if coverage was "restored" under its policy, premium for said coverage would admittedly be due (as none was paid for said acres on which no claim was paid). To be clear, DCIS is not challenging the *substance* of the decision, but simply noting as a matter of logic that if an arbitration award, based in contract, is made, then there ought to be an accompanying determination representing, among other things, the premium due (or withheld) for said award. It is absent, and there is no calculation, leading further to the conclusion that the damages awarded arise 100% out of tort, not contract.

DCIS respectfully requests, as an independent and separate ground, that the Court vacate the subject arbitration award pursuant to 9 USC §10(a)(3) on grounds that the arbitrator refused "to hear evidence pertinent and material to the controversy" concerning damages, or so imperfectly executed her powers that a mutual, final, and definite award upon the subject matter submitted was not made." See also 9 USC §10(a)(4).

## VII. CONCLUSION

The arbitrator exceeded her powers by assuming the FCIC's role as interpreter of policy and procedure which MPCI Basic Provisions §20, the arbitration clause, expressly prohibits. The arbitrator also did not issue an award that complies with MPCI Basic Provisions §20(a)(2), which required her to render a "written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award." The arbitration agreement between the parties specifically states that the failure of the arbitrator to comply with the arbitration clause's requirements results in nullification of the award. Id. at

§§20(a)(1)(ii) and 20(a)(2). DCIS hereby requests that this Court enter an Order vacating and nullifying the subject award pursuant to the Federal Arbitration Act, 9 USC §10(a)(3) & (4), since the Arbitrator exceeded the authority granted to her in the Policy and otherwise issued an award devoid of any basis or explanation as to contractual damages.

The Federal crop insurance policy under which the arbitrator derived her authority to resolve WF's dispute nullifies an award when 1) the award does not include a breakdown by claim and basis for any award; and 2) the arbitrator interprets the subject policy or FCIC procedure. Only FCIC is authorized to determine the meaning of policy terms. The nullification provisions are, by express terms of the policy, self-executing, and the Court must enforce them herein. It is simply without question that, on multiple occasions, the arbitrator interpreted the policy and applied her own version of the policy provisions in rendering her award.

DCIS respectfully asks that the Court enforce the inherent nullity of the Arbitrator's Award in accordance with the terms of the parties' arbitration agreement and vacate the award. Pursuant to LR 7.1(i), DCIS respectfully requests that the Court grant oral argument on its Motion to Vacate Arbitration Award. The issues to be considered relate to federal crop insurance policies and are complex. As such, oral argument may be beneficial to the Court in ruling on said motion.

<table>
<tr><td>/s/ <i>R. Jefferson Allen</i></td><td>/s/ <i>Derek M. Crump</i></td></tr>
<tr><td>R. JEFFERSON ALLEN</td><td>DEREK M. CRUMP</td></tr>
<tr><td>Hunt Ross & Allen, P.A.</td><td>Brown, Crump, Vanore & Tierney, L.L.P.</td></tr>
<tr><td>P.O. Box 1196</td><td>Post Office Box 1729</td></tr>
<tr><td>Clarksdale, MS 38614</td><td>Raleigh, North Carolina 27602-1729</td></tr>
<tr><td>Telephone: 662-627-5252</td><td>Telephone: 919-890-4477</td></tr>
<tr><td>Facsimile: 662-627-5254</td><td>Facsimile: 919-835-0915</td></tr>
<tr><td>Email: rjallen@huntross.com</td><td>Email: dcrump@bcvtlaw.com</td></tr>
<tr><td>Mississippi State Bar No.: 10593</td><td>N.C. State Bar No.: 15818</td></tr>
<tr><td>Attorney for Respondent</td><td>Local Civil Rule 83.1 Counsel for Respondent</td></tr>
</table>

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:16-MC-18-D**

WILLIAMSON FARM,     )
             )
      **Petitioner,**  )
             )
  **vs.**          )
             )
**DIVERSIFIED CROP INSURANCE** )
**SERVICES a/k/a CGB DIVERSIFIED** )
**SERVICES, INC.**     )
             )
      **Respondent** )
_____ )

## CERTIFICATE OF SERVICE

   I hereby certify that on June 29, 2016, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following:

**Matthew W. Buckmiller and Kindelle McCullen**.

   Respectfully submitted,

| | |
|---|---|
| /s/ *R. Jefferson Allen*_____ | /s/ *Derek M. Crump*_____ |
| R. JEFFERSON ALLEN | DEREK M. CRUMP |
| Hunt Ross & Allen, P.A. | Brown, Crump, Vanore & Tierney, L.L.P. |
| P.O. Box 1196 | Post Office Box 1729 |
| Clarksdale, MS  38614 | Raleigh, North Carolina  27602-1729 |
| Telephone: 662-627-5252 | Telephone: 919-890-4477 |
| Facsimile: 662-627-5254 | Facsimile: 919-835-0915 |
| Email: rjallen@huntross.com | Email: dcrump@bcvtlaw.com |
| Mississippi State Bar No.: 10593 | N.C. State Bar No.: 15818 |
| Attorney for Respondent | Local Civil Rule 83.1 Counsel for Respondent |

26