IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:16-MC-18-D

| | |
|---|---|
| WILLIAMSON FARM, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| DIVERSIFIED CROP INSURANCE | ) |
| SERVICES a/k/a CGB DIVERSIFIED | ) |
| SERVICES, INC. | ) |
| | ) |
| Respondent | ) |
| | ) |

**DIVERSIFIED CROP INSURANCE SERVICES' REPLY IN
FURTHER SUPPORT OF ITS MOTION TO VACATE ARBITRATION AWARD**

COMES NOW Diversified Crop Insurance Services ("DCIS"), by and through counsel, and in further support of its Motion to Vacate Arbitration Award, herein submits the following reply:

**I. OVERVIEW**

DCIS herein submits to this court the sixth (6th) pleading, total (*all parties*), subsequent to an arbitration award rendered and involving these parties. Of course, this court has now requested an Amicus filing from the Federal Crop Insurance Corporation, Risk Management Agency ("RMA"). DCIS supports this request and believes that it will be entirely beneficial to the court and the parties since the key arguments appears to surround the following questions, generally stated: "What was RMA's intent in drafting the subject federal crop insurance policy with regards to the scope of an arbitrator's authority?" "What is an arbitrator's authority in rendering an award?" "When, if ever, may an arbitrator award damages *other than* those arising in contract?" "Are arbitrator's required to obtain Final Agency Determinations when they have questions of policy interpretation?" "Are

arbitrators permitted to interpret the policy?" "Is an arbitration ruling automatically null and void if an arbitration undertakes the task of interpreting the policy?" While there are additional issues now before this court, the answer to these inquiries should go a long way towards the resolution of this dispute.

## II. ARGUMENT

1. **The Decision by the Arbitrator to Expand and/or Go Outside the Scope of Her Authority Was Not a Simple "Misinterpretation of Law," Immune from this Court's Review.**

In Petitioner's Response, and specifically the introductory paragraph to its "Argument" section (Doc. 14, at p.3), Petitioner hits the nail on the head by writing, "As long as an honest arbitrator ... [is] *acting within the scope of her authority* ..." Thus, it appears that the parties are in agreement that an arbitrator must have actual authority to render a subject decision. Despite this apparent agreement, therein also lies the crux of this dispute. Where Petitioner and DCIS diverge on this topic is when the Petitioner "lumps" the arbitrator's legal conclusion that she had authority to award damages other than contractual ones as simply a "Misinterpretation of Law." That is an incorrect postulate.

To briefly digress, in its Response, Petitioner appears confused that DCIS did not otherwise argue that it disagreed with the arbitrator's factual findings. *Of course* DCIS disagrees with nearly every factual finding made by the arbitrator, but neither the subject policy nor the FAA allow for these matters to be re-litigated based solely upon disputed facts. Likewise, and while not applicable to this case, had the arbitrator made a determination on a particular *acute* point of law that swayed the outcome, then theoretically, that point might not be subject to review.

In this case, however, the decision that the arbitrator made was "global" in nature. Stated differently, her decision on the scope of her authority did not involve a limited ruling; instead, her determination opened up an entire level of damages that DCIS would contend were not otherwise recoverable in arbitration. An analogy might be appropriate. It is DCIS's position that the scope of the arbitrator's authority – *i.e.*, damages recoverable *under the contract* – could fit within a baseball. Again, had the arbitrator issued a finding *within* the confines of that area, factual and *potentially* legal, then DCIS might be stuck with same ... *inside* the baseball. To the contrary, the arbitrator made a legal decision and/or contractual interpretation (which, here, can be viewed as one-in-the-same since the policy is, itself, federal law) outside the confines of the arbitration, thus expanding the scope of same to the size of a basketball. Now, contained within that much larger basketball are the original potential contractual damages (of which DCIS would again note there were none claimed, but rather a claim of agent error arising *out of* the contract[1]) along with the expanded palette of treble damages and attorney's fees. Thus, the arbitrator's "misapplication of law" did not involve an issue *within* the area of the baseball; instead, her decision was outside of the scope, with the net effect of expanding the area to the size of a basketball. This is the distinction that the Petitioner misses in its analysis. When the arbitrator made this determination, she stepped outside of the scope

---

[1] DCIS disagrees that the arbitrator found a breach of contract. A plain reading of her award, despite being styled as a "breach," indicated that she found error on the part of DCIS's agents. As previously argued, the arbitrator was not permitted to award damages for said conduct. More to the point, all damages awarded by the arbitrator arose out of the contract, but did not involve a breach thereof. Petitioner disingenuously first asserts that DCIS did not argue against the "contract" award, but then later acknowledges that DCIS was taking the position that the self-styled contract damages were "non-contractual."

3

of her authority. Thus, per the FAA – and the applicable federal crop insurance policy which requires nullification – this court must overturn the arbitrator's decision.[2]

As an aside, and not an unimportant one, as DCIS urged in its original supporting brief, if the arbitrator had any questions concerning what the policy allowed, meant, dictated, or otherwise held – and it's clear that these issues were in dispute as they were strenuously argued by both sides – then the arbitrator had a duty to obtain a Final Agency Determination from the FCIC. All other issues notwithstanding, her failure to request a policy interpretation results in immediate award nullification.[3] While not trying to re-argue the same points previously made, these very questions (scope of authority, damages awardable, *etc*.) had already been the subject of FCIC interpretations, and this is important for two (2) reasons. First, one view is that the arbitrator failed to obtain a necessary interpretation, the result of which is policy nullification. In other words, how do you argue that a matter didn't need to be interpreted when it had *already* been interpreted. Second, the alternate view is that the arbitrator refused to follow a previously issued FAD, the result of which is also nullification. The Petitioners are basically forced to pick their poison ...

### 2. This Is Judicial Review

Petitioner makes the claim that Section 20(i) of the policy, pertaining to recoverable damages (*e.g.*, attorney's fees, treble, and/or other damages and costs) only applies when judicial review is sought. Petitioner then makes the self-serving claim that it does not seek judicial review, only a

---

[2] Although implied within DCIS's Reply, if the arbitrator exceeded the scope of her authority, then Petitioner's arguments concerning "deference" to her decision must fail. All of the case law cited by Petitioner is contingent upon, first and foremost, the decision being within the scope of the arbitrator's authority.

[3] At least one FAD was needed, but likely more based upon a plain reading of the arbitrator's award.

4

"confirmation" of the award (which, to complete the entirely circular logic, is an award which contains damages otherwise only recoverable *in judicial review*[4]). Of course, the policy states that the decision of the arbitrator is binding *on you and us* unless judicial review is sought. Herein, DCIS is seeking a judicial review, but of course, said review is a request to overturn the award rendered by the arbitrator, not a request by Petitioner for an award of the disputed extra-contractual damages.

### 3. The Arbitrator Interpreted the Policy. Petitioners Do Not Dispute This Fact

Petitioner spends more than half of its brief arguing that the Arbitrator did not exceed her authority. They attack every cited example of policy interpretation provided by DCIS. With much irony, the case is made by 1) carrying the arbitrator's mantle and arguing that the decisions (*interpretations*) were proper, and 2) arguing any such request for an interpretation, if made, would have magically yielded a response from FCIC most beneficial to the Petitioner. What is absent from Petitioner's response brief, however, is any contention that the arbitrator *did not* interpret the policy. Instead, Petitioner simply argues that *when* the arbitrator interpreted the policy, she got it right. That, however, is not how the policy is written or how the system is otherwise set to work. Only FCIC can interpret the policy, and the arbitrator was keenly aware of this because DCIS argued it, in writing,

---

[4] Further, said damages – over and above contract – are only recoverable if the FCIC has made a finding that the company and/or its agent has acted outside of the policy, applicable provisions, regulations, *etc*. There has been no such determination made by FCIC. Petitioner also plays fast and loose with the terms of the policy by arguing that it doesn't say, in 20(i), that an arbitrator cannot award such extra-contractual damages; of course, 20(i) *does* say that said damages may only be awarded in judicial review. Again, the arbitrator clearly had no authority to award said damages (and if she had any doubt as to her authority, she needed to seek a policy interpretation).

5

in both its pre-hearing and post-hearing briefs. More to the point, it is stated with great clarity in the subject federal crop insurance policy.[5]

### 4. The Arbitrator's Award Does Not Include a Claim Breakdown / Basis

DCIS will simply touch upon this point to emphasize that Petitioner failed to contradict one glaring omission from the arbitrator's award: From where did the numbers come which served as the basis for the "contract" award? Neither figure, $97,692.39 nor $77,668.59, are found in any supporting document offered by the arbitrator. Now, Petitioner has had its chance to explain the origin, and it was silent on the issue. Why? Because these numbers do not arise from any contract. They were pulled out of thin air and bear no relation to any contract at issue herein. Because of this, the arbitrator's decision fails to comply with MPCI Basic Provisions §20(a)(2) as there is no "breakdown by claim."

---

[5]DCIS will simply note that Petitioner spent a great deal of time arguing federal case law that is no longer good law due to the fact that 7 CFR §400.352(b)(4) has been recently amended. DCIS argued this extensively in its original supporting brief and will simply incorporate the same by reference herein. "[T]he preamble to the policy specifies that no policy provisions may be waived or varied in any way by an insurance provider, agent or any other contractor or employee of the insurance provider or USDA unless the policy specifically authorizes a waiver or modification by written agreement. To allow for equitable relief could permit government employees, insurance providers or agents to modify or waiver policy provision, which would conflict with the preamble." 69 Fed. Reg. 48652-01, at 48654-56 (Aug. 10, 2004); see also Pelzer v. ARMtech Ins. Services, Inc., 928 F.Supp.2d 1071, 1079-80 (E.D. Ark. 2013) (*citing* commentary and stating that "[t]his commentary confirms that **the contract cannot be reformed**. . .").

## III.  CONCLUSION

For the reasons urged in DCIS's original supporting brief and herein, this Court should nullify and vacate the subject Arbitrator's Award.

| | |
|---|---|
| /s/  *R. Jefferson Allen* | /s/ *Derek M. Crump* |
| R. JEFFERSON ALLEN | DEREK M. CRUMP |
| Hunt Ross & Allen, P.A. | Brown, Crump, Vanore & Tierney, L.L.P. |
| P.O. Box 1196 | Post Office Box 1729 |
| Clarksdale, MS  38614 | Raleigh, North Carolina  27602-1729 |
| Telephone: 662-627-5252 | Telephone: 919-890-4477 |
| Facsimile: 662-627-5254 | Facsimile: 919-835-0915 |
| Email: rjallen@huntross.com | Email: dcrump@bcvtlaw.com |
| Mississippi State Bar No.: 10593 | N.C. State Bar No.: 15818 |
| Attorney for Respondent | Local Civil Rule 83.1 Counsel for Respondent |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:16-MC-18-D

| | |
|---|---|
| WILLIAMSON FARM, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| DIVERSIFIED CROP INSURANCE | ) |
| SERVICES a/k/a CGB DIVERSIFIED | ) |
| SERVICES, INC. | ) |
| | ) |
| Respondent | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Matthew W. Buckmiller and Kindelle McCullen**.

Respectfully submitted,

/s/ *R. Jefferson Allen*       /s/ *Derek M. Crump*
R. JEFFERSON ALLEN             DEREK M. CRUMP
Hunt Ross & Allen, P.A.        Brown, Crump, Vanore & Tierney, L.L.P.
P.O. Box 1196                  Post Office Box 1729
Clarksdale, MS 38614           Raleigh, North Carolina 27602-1729
Telephone: 662-627-5252        Telephone: 919-890-4477
Facsimile: 662-627-5254        Facsimile: 919-835-0915
Email: rjallen@huntross.com    Email: dcrump@bcvtlaw.com
Mississippi State Bar No.: 10593   N.C. State Bar No.: 15818
Attorney for Respondent        Local Civil Rule 83.1 Counsel for Respondent

8